IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STEVEN ERIC KIRCHNER, ELIZABETH LEE KIRCHNER, and ROBERT GRANT WESTON, individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WYNDHAM VACATION RESORTS, INC.,<br><br>Defendant. | Civil Action No. 20-436-RGA |

MEMORANDUM ORDER

Before me are Defendant's Motion to Dismiss as to counts asserted by Plaintiff Robert Weston (D.I. 86) and Plaintiffs' Motion for Leave to Amend Class Definition (D.I. 90). I have considered the parties' briefing on the Motion to Dismiss (D.I. 87, 91, 92) and the Motion for Leave to Amend (D.I. 90, 93, 94).

I. **Background**

This putative class action arises out of alleged omissions and misrepresentations made in timeshare sales presentations by Defendant Wyndham. Plaintiffs Steven Eric Kirchner and Elizabeth Kirchner filed their first complaint on March 27, 2020 with co-Plaintiff Nazret Gebremeskel on behalf of themselves and all other persons similarly situated. (D.I. 1). The class allegations were limited to people who signed timeshare agreements in Tennessee and Nevada. The Kirchners sought to represent the class of persons who had signed timeshare agreements in Tennessee, while Ms. Gebremeskel sought to represent the class of persons who had signed agreements in Nevada. (D.I. 1 ¶¶ 60-61).

1

After a dismissal under Federal Rule of Civil Procedure 9(b), Plaintiffs filed an amended complaint on April 26, 2021, substituting Gebremeskel with a new class representative, Marcia Richards, because Gebremeskel's claims were individually settled. (D.I. 21 ¶ 1). In addition to pleading additional facts to cure the Rule 9(b) defect, the First Amended Complaint added a count of "fraudulent inducement by omission," and correspondingly modified the putative class to one without geographical restrictions, with all three named Plaintiffs serving as class representatives. (D.I. 27 ¶ 65). The Kirchners continued to seek to represent the subclass of persons who had signed agreements in Tennessee, while Richards sought to represent the subclass of persons who had signed agreements in Nevada. (*Id.* ¶¶ 65-67).

I dismissed Plaintiff Richards' claims as untimely. (D.I. 44 at 6-8).

Plaintiffs then filed a Second Amended Complaint, substituting Plaintiff Robert Weston as an additional class representative for the national class and as the sole representative for the Nevada subclass. (D.I. 52 ¶¶ 65, 67). The current operative complaint is the Third Amended Complaint, which added additional factual pleadings to the Second Amended Complaint. (D.I. 80, 83). It alleges fraudulent inducement by omission, violation of Nevada deceptive trade practices act, and violation of Tennessee timeshare act.

## II. Defendant's Motion to Dismiss

Defendant moves to dismiss Counts One and Two of Plaintiffs' Third Amended Complaint as to Plaintiff Robert Weston under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. First, Defendant contends Weston's claims are time-barred. (D.I. 87 at 2). Second, as to Count Two for violation of the Nevada Deceptive Trade Practices Act (NDTPA), Defendant argues that the NDTPA does not apply to timeshares. (D.I. 87 at 3). I address these arguments in the reverse order and find that the NDTPA does not apply to timeshares, but that

Plaintiff Weston's fraudulent inducement claim is not time-barred because it relates back to the first complaint in this case.

### A. NDTPA

Plaintiffs bring suit under Nev. Rev. Stat. § 41.600 because Defendant engaged in a prohibited act defined by Nev. Rev. Stat. § 598.0915. (D.I. 83 ¶ 101). Nev. Rev. Stat. § 598.0915 defines sixteen prohibited deceptive trade practices. Plaintiff specifically asserts only that subsection 15, "[k]nowingly makes any other false representation in a transaction," applies to Defendant. (D.I. 91 at 12).

Defendant argues that § 598.0915(15) is limited to goods and services even though this is not explicitly stated. (D.I. 87 at 11-12). Defendant points to *Archer v. Bank of Am. Corp.*, which states, "[T]he court finds that § 598.0915(15), like the rest of the statute, applies to transactions involving 'goods or services.'" 2011 WL 6752562, at *2 (D. Nev. Dec. 23, 2011). Defendant asserts that timeshares are not a good or service, noting that California courts have found timeshares to be neither a good nor a service "under [a] substantially similar consumer protection statute." (D.I. 87 at 10 (citing *Kissling v. Wyndham Vacation Resorts, Inc.*, 2015 WL 7283038, at *4 (N.D. Cal. Nov. 18, 2015))).

Plaintiffs respond that no cases from Nevada explicitly find that timeshares are not goods or services. (D.I. 91 at 11). Plaintiffs note that in *Fuoroli v. Westgate Planet Hollywood Las Vegas, LLC*, the District of Nevada found that a claim under § 598.0915(15) regarding misrepresentations in timeshare sales presentations "may be viable." 2011 WL 1871236, at *7 (D. Nev. May 16, 2011). Plaintiffs argue that the Nevada Time Shares Act, which prohibits "deceptive or unfair acts in the offer to sell or sale of a time share," incorporates the unfair

3

practices defined in § 598.0915 as examples of unfair practices, suggesting that the § 598.0915 should apply to timeshares. NEV. REV. STAT. § 119A.710.

I agree with Defendant that timeshares are neither a good nor a service. Although Defendant cites only to law from other jurisdictions for the specific proposition about timeshares, *Archer* makes clear, based on a line of cases, that "real estate transactions" of various sorts are not goods or services and are not covered by § 598.0915, including subsection 15. 2011 WL 6752562 at *2. Plaintiffs cite to no authority and provide no argument suggesting why a timeshare, unlike other property interests, should be considered a good or service—indeed, Plaintiffs do not even propose which of the two a timeshare would be. Since *Archer* and the line of cases it cites quite explicitly limit § 598.015(15) to goods and services, I find that the NDTPA does not apply here. The observation about timeshares in *Fuoroli* is inconclusive and appears to be at most dicta, and Plaintiffs cite no other cases suggesting that the NDTPA should apply to timeshares. I do note that another District of Nevada case, not cited by either party, states that § 598.0915(15) "do[es] not appear to limit deceptive trade practices to goods or services" and denied a motion to dismiss on that basis. *The Bank of New York Mellon v. Cape Jasmine CT Trust*, 2016 WL 3511253, at *5 (D. Nev. Jun. 27, 2016). However, the case does not cite *Archer* or any other caselaw and spends little time discussing § 598.09815(15) in the context of the other fifteen subsections.

There seems to be a split of authority arising from the District of Nevada. I am persuaded that *Archer* represents the more convincing line of cases, and that § 598.0915(15) does not apply to timeshare transactions.[1]

---

[1] If the parties wish to pursue a definitive answer from the Supreme Court of Nevada, and that Court has a procedure for doing so, I am amenable to making such a request. I agree with a sentiment I have seen expressed more than once, though I am not relying upon it in this case.

4

I also do not find the incorporation of NDTPA definitions into the Nevada Time Shares Act persuasive. If anything, the existence of a separate act applicable to timeshares suggests that the NDTPA does not apply to timeshares. Therefore, Plaintiffs have failed to state a claim under the NDTPA, and I will dismiss Count Two.

## B. Statute of Limitations

Having dismissed Count Two, I consider whether Weston's claim for fraudulent inducement by omission is time-barred. I previously determined that the relevant statute of limitations for evaluating timeliness in this action is Delaware's. (D.I. 44 at 7). The limitations period in Delaware for claims that sound in fraud is three years. DEL. CODE ANN. tit. 10, § 8106(a). The parties agree that Weston's limitations period began to run on October 20, 2017. (D.I. 87 at 5, D.I. 91 at 5). Therefore, it would have expired on October 20, 2020. Weston was added as a named plaintiff on February 11, 2022. However, under Federal Rule of Civil Procedure 15(c)(1)(B),[2] "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

Defendant argues that Weston's claim does not relate back because it does not "arise out of the conduct, transaction, or occurrence previously alleged." (D.I. 87 at 6). Defendant notes, "Weston attended a different timeshare presentation, on a different date, at a different property, spoke to different salespeople, and signed a different contract than the prior plaintiff," referring

---

"Federal courts are loathe to fiddle around with state law. Though district courts may try to determine how the state courts would rule on an unclear area of state law, district courts are encouraged to dismiss actions based on novel state law claims." *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000).

[2] Because no amendment has "change[d] the party or the naming of the party against whom a claim is asserted," Rule 15(c)(1)(C) does not apply.

5

to Richards.[3] (*Id.*). Defendant also notes that Weston "alleges six new omissions," suggesting that his claims therefore arise out of different conduct. (D.I. 92 at 3). Defendant points to several cases from other circuits that found no relation back when new claims were based on different contracts or different acts of disclosure. (D.I. 87 at 6-7). Defendant emphasizes that the class actions on which Plaintiffs base their arguments have only allowed new class representatives to assert precisely identical claims. (D.I. 92 at 4). Finally, Defendant asserts that it did not have "notice" that Weston could have a claim based on a separate timeshare transaction and new alleged omissions. (D.I. 92 at 4).[4]

Plaintiffs argue that Weston's situation is akin to the substitution of class representatives. (D.I. 91 at 6-7). They argue that Defendant had fair notice and suffers no prejudice or surprise. (*Id.* at 7). Plaintiffs note that another District Court in this circuit has said, "The touchstone of relating back is fair notice." *In re Diisocyanates Antitrust Litig.*, 2020 WL 5350319, at *5 (W.D. Pa. Sept. 4, 2020) (citing *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 149 n.3 (1984)). Plaintiffs also argue that "regardless of where owners attended presentations, and regardless of the identity of the salespeople, prospective purchasers were all subject to the same material uniform omissions." (D.I. 91 at 8).

I agree with Plaintiffs that Weston's claims relate back to the original March 2020 complaint. Weston was a member of a class described in that complaint: "All persons who signed Wyndham Security Agreements in Nevada within four years prior to the filing of this suit

---

[3] I note that Defendant's discussion of Ms. Richards is irrelevant to the extent that Plaintiffs seek to relate Weston's claims back to the first complaint on which Ms. Gebremskel was representative for the Nevada class.

[4] Defendant also notes that the fact that the present case was not consolidated with another in this district also alleging omissions by Wyndham should indicate that the claims do not relate back. (D.I. 94 at 3). I think this observation is irrelevant.

after attending Wyndham sales presentations who have unsuccessfully requested cancellation of their contracts." (D.I. 1 ¶ 60). Unlike Richards' claims, Weston's claims were not time barred at the time of the filing of the March 2020 complaint. (*See* D.I. 44 at 7). Although I am not aware of, and the parties did not cite, a conclusive ruling from the Third Circuit on this issue, the Third Circuit has stated in dicta, "[A]bsent members of a class—at least in relation to an applicable statute-of-limitations period—are essentially 'parties' to the class action while a certification decision is pending." *In re Community Bank of N. Va.*, 622 F.3d 275, 298 (3d Cir. 2010) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 550 (1974)).[5] Weston's fraudulent inducement claim certainly arises out of the same transaction that rendered him a member of the class—and thus essentially a party—in the March 2020 complaint. Plaintiffs have never moved for certification. Therefore, Weston's claim relates back to that complaint.

None of the cases cited by Defendant concern class actions. Defendant's argument that the class action cases Plaintiff cited only involved new class representatives asserting identical facts is unpersuasive—even if Plaintiff Gebremeskel were still class representative, new facts and omissions could have come to light since March 2020 that would justify amending the complaint. Defendant's claim that it could not have been on notice about Weston's claims is even more unpersuasive, since the class from the initial complaint clearly includes all persons who signed agreements in Nevada—not just those who attended the same sales presentation as Ms. Gebremeskel.

---

[5] *American Pipe* concerned the tolling of a statute of limitations, an issue the parties argue but I do not reach. In *Community Bank*, however, the Third Circuit noted that the logical extension of *American Pipe* was that an amended class complaint should relate back to the original. The Court also noted the Seventh Circuit's more explicit finding that relation back should be allowed in order to substitute named plaintiffs in class actions. *Community Bank*, 622 F.3d at 298 (citing *Phillips v. Ford Motor Co.*, 435 F.3d 785, 788 (7th Cir. 2006)).

7

I note that I do not decide whether plaintiffs who did not sign agreements in Nevada or Tennessee would be able to relate their fraud claim back to the March 2020 complaint.

### III. Plaintiffs' Motion to Amend Class Definition

Plaintiffs seek to amend only the class definition portion of the Third Amended Complaint. (D.I. 90 ¶¶ 6-7). The previous class definition included "all persons who had successfully requested cancellation of their contracts" with Defendant. (*Id.* ¶ 5). Plaintiffs proposed amendment would expand the class to include all persons who signed agreements without arbitration clauses, regardless of whether they unsuccessfully requested cancellation. (*Id.* ¶ 7).

Federal Rule of Civil Procedure 15(a)(2) states that, apart from amendments as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A request that falls after the court's deadline to amend must also meet the "good cause" standard from Rule 16(b)(4). *Premier Comp Solutions v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). "'Good cause' exists when the [s]chedule cannot reasonably be met despite the diligence of the party seeking the extension." *ICU Medical, Inc. v. Ryman Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009). The Third Circuit recently clarified that the analysis under Rule 16(b)(4) must precede the Rule 15(a)(2) analysis. *Premier Comp*, 970 F.3d at 319.

Plaintiffs argue that good cause to amend exists because Plaintiffs only recently learned that about 2,000 out of 250,000 customers total had unsuccessfully requested cancellation, and Plaintiffs diligently sought to amend after learning this. (D.I. 94 at 3-4). Plaintiffs are in essence saying they miscalculated the size of the class and would now like to make it bigger. That is not good cause. Plaintiffs say that "no additional discovery or additional responses to existing

8

discovery" will be needed, so Defendant will not be prejudiced. (D.I. 94 at 5). Plaintiffs also note that they are not bound by the class definition in the complaint but may seek certification of a different class when they move for class certification. (D.I. 94 at 2).

Defendant responds that Plaintiffs did not address good cause in their initial motion. (D.I. 91 at 4). It asserts that good cause does not exist given that Plaintiffs have not identified new facts or any other reason for amendment. (*Id.*).

Despite the apparent lack of prejudice to Defendant, I am not persuaded there is good cause to amend the class definition at this stage.[6] More importantly, Plaintiffs' observation that they could still change the class definition at the certification stage leads me to conclude that they will suffer no prejudice from my denying this motion. Plaintiffs also note that they do not intend to seek any additional discovery. Thus, Plaintiffs provide no reason why the class definition needs to be changed at this time in a motion to amend and cannot simply be changed when they move for class certification (if Plaintiffs are correct that they can do that then). Therefore, Plaintiffs' Motion is DENIED without prejudice to their proposed change to the class definition at the certification stage.

## IV.   Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss (D.I. 86) is DENIED as to Count One and GRANTED as to Count Two. Plaintiffs' Motion for Leave to Amend (D.I. 90) is

---

[6] In fact, Plaintiffs seem to have waived argument as to good cause, since they only addressed it in their reply brief. I find there is no good cause regardless.

DENIED. Count Two is DISMISSED.

IT IS SO ORDERED.

Entered this 27th day of March, 2023

_[signature]_
United States District Judge