## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **STEVEN ERIC KIRCHNER, ELIZABETH LEE KIRCHNER, and ROBERT GRANT WESTON, Individually and on behalf of all persons similarly situated,** | **No. 1:20-CV-00436-CFC** |
| **Plaintiffs,** | |
| **vs.** | **JURY TRIAL DEMANDED** |
| **WYNDHAM VACATION RESORTS INC.,** | **CONFIDENTIAL FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** |
| **Defendant.** | |

## PLAINTIFFS' OPENING BRIEF IN SUPPORT
## OF <u>MOTION FOR CLASS CERTIFICATION</u>
### (REDACTED)

Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
Herbert W. Mondros, Esq. (#3308)
RIGRODSKY LAW, P.A.
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Tel.  (302) 295-5310
Email: sdr@rl-legal.com
Email: gms@rl-legal.com
Email:hwm@rl-legal.com

Howard B. Prossnitz, Esq.
LAW OFFICES OF
HOWARD PROSSNITZ
1014 Ontario Street
Oak Park, IL 60302
(708)203-5747
prossnitzlaw@gmail.com
*Pro hac vice*

*Attorneys for Plaintiff*

Dated: October 19, 2023

# TABLE OF CONTENTS

Page No.

I.    Introduction ………………………………………….…    1

II.    Nature and Stage of the Proceedings …………………..    2

III.    Summary of Argument ……………………….……………    3

IV.    Statement of Facts …………………………….……..…..    4

    A.  The Plaintiffs  …………………………………..……..    4

    B. Wyndham's Uniform Non-Disclosures………..………    7

    C. Wyndham's Misleading ██████████.…………    9

V.    Argument …………………………………………………..    11

    A. Plaintiffs Satisfy the Requirements of Rule 23 (a)………    11

        1.    Numerosity……………………………………………    12

        2.  Commonality……………………………………………    13

        3.  Typicality……………………………………………..    14

        4.    Adequacy of Representation…………………………    19

    B.    The Requirements of Rule 23(b)(2) and (3) Are
        Satisfied ……………………………………………………    21

        1.    The Rule 23(b)(3) Class and Subclass Should Be
            Certified ……………………………….………………..    21

        2.  The Rule 23(b)(2) Class Should Be Certified …………    23

i

C.    The Court Should Appoint Plaintiffs as Lead Plaintiffs and
        Plaintiffs' Attorneys as Class Counsel………………………...    24

VI.    Conclusion …………………………………………………    25

Index to Exhibits…………………………………………………..    26

Certification of Word Count……………………………………….    28

Certificate of Service……………………………………………    29

## <u>TABLE OF AUTHORITIES</u>                    <u>Page No.</u>

*Alexander v. Gino's, Inc.*, 621 F.2d 71, 74 (3d Cir. 1980)………………..   12

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ……………..…   22

*Amgen Inc. v. Connecticut Retirement Plans*, 568 U.S. 455, 459 (2013)…   22

*Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ……………………....   13,  23

*Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) …………………   11, 12

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981) …………………………   11

*Heisman v. Wyndham Vacation Resorts, Inc.*, 2021 WL 1138125 at *1
(D.N.J. March 22, 2021) ………………………………………………………   5

*In re Catfish Antitrust Litigation*, 826 F. Supp. 1019, 1035
(N.D. Miss. 1993) ……………………………………………………   15

*In re Chiang*, 385 F.3d 256, 265 (3d Cir. 2004) …………………………....   14

*In re Constar International Inc. Securities Litigation,* 585  F. 3d 774, 780
(3d Cir. 2009) …………………………………………………………………...   12

*In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 311 (3d Cir. 2008)….   22

*In Re Prudential Insurance Company America Sales Practice Litigation
Agent Actions*, 148 F. 3d 283 (3d Cir. 1998) …………………………   3, 4,14, 22

*In re: The Prudential Insurance Company of America Sales
Practices Litigation,*  962 F. Supp. 450, 511 (D. N.J. 1997) ……………..…   4,14

*In re Suboxone Antitrust Litigation*, 967 F. 3d 264, 273 (3d Cir. 2020)………   20

*In Re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 247
(D. Del. 2002) ……………………………………………………………..   22

*Jerry Enter., Inc. v. Allied Beverage Group, L.L.C.*, 178 F.R.D. 437, 446 (D.N.J. 1998) …………………………………………………………….. 20

*Johnston v. HBO Film Mgmt. Inc.*, 265 F.3d 178, 184 (3d Cir. 2001)………. 13

*Norton v. Polpos*, 443 A. 2d 1, 6 (Sup. Ct. Del. 1982) ……………………… 21

*Spark v. MBNA Corp.*, 178 F.R.D. 431, 434 (D. Del. 1998) ……………....... 11

*Stewart v. Abraham*, 275 F.3d 220, 226- 27 (3d Cir. 2001) ……………..…. 13

*TEVA Pharmaceuticals USA Inc. vs. Abbott Laboratories*, 252 F.R.D. 213, 227 (D. Del. 2008) …………………………………………………………….… 4

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 402-03 (1980) …… 12

*Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 140 (D.N.J. 2002), *aff'd*, 84 Fed. Appx. 257 (3d Cir. 2004) …………………………………………….. 14

*Weiss v. York Hosp.*, 745 F.2d 786, 808, n.35 (3d Cir. 1984)……………. 12, 23

*Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975)……………. 20

*Williams v. Wyndham Vacation Ownership, Inc.* (San Francisco Superior Ct., Case No. CGC-12-526187) ……………………………………………….. 8

STATUTES

Fed. R. Civ. P. 23………………………………………………..…    *passim*

Fed. R. Civ. P. 23(b)(2)…………………………………………….    *passim*

Fed. R. Civ. P. 23(b)(3)…………………………………………….    *passim*

Fed. R. Civ. P. 23(g)(1) ………………………………………….....    24

Fed. R. Civ. P. 23(g)(1)(B) …………………………………..……...    24

Fed. R. Civ. P. 23(g)(1)(A)(iv) ……………………………………….    24

Plaintiffs Steven and Elizabeth Kirchner (Kirchners) and Robert Weston (Weston) submit this Opening Brief in Support of Plaintiffs' Motion for Class Certification.

## I. **INTRODUCTION**

After years of hard-fought litigation, the review of 550,000 Wyndham Vacation Resorts, Inc. (Wyndham) documents, multiple depositions, the investment of $1 million worth of legal time by plaintiffs' counsel, eleven meet and confer conferences, multiple motions to compel, and the cooperation of a whistleblower witness, Plaintiffs recently ███████████████ documents which pave the way for class certification.

The documents establish <u>uniform</u> <u>common</u> <u>omissions</u> of critical importance to prospective Wyndham timeshare Owners. ████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████ (**Exhibit A** - CONFIDENTIAL - WVR Kirchner Doct. Nos. 0541806 to 0541807).[1] Wyndham does not disclose the

---

[1] Plaintiffs are required to file this brief under seal pursuant to the Protective Order (Doct. No. 60). Wyndham has stamped all its damaging internal documents "CONFIDENTIAL".

██████████████████ It is like the seller of a car withholding the fact ██████████

████████████████████████████████.

All Class Members were subject to the same omissions.  Instead of disclosure,

████████████████████████████████████████████████████████

████████████████ ███ ███ ██████ █████ ███ ██ ██ ████

████████████████████ (*See* **Exhibit M** *infra*, p. 10.) (Emphasis

supplied.)

Through its omissions, Wyndham is able to sell timeshares for an average of

$21,000 when the same timeshares can actually be acquired for  $1 on ebay.

(Corrected Third Amended Complaint "Complt." ¶ 3.)   All Wyndham sales

presentations <u>are</u> <u>the same</u> in that they all have these omissions.   The common

question which predominates is whether Wyndham's omissions are actionable.

## II.  <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

With the instant motion, Plaintiffs ask the Court to certify the following Class

and Sub-Class under Fed. R. Civ. Pro. 23(b)(3):

a.  All persons who signed Wyndham timeshare agreements (without arbitration clauses and without prior Wyndham timeshare agreements) within three years prior to the filing of this suit after attending Wyndham sales presentations who  requested cancellation of their contracts, were unsuccessful in obtaining rescission, and complained about sales misrepresentations.

b.  All persons who signed Wyndham timeshare agreements (without arbitration clauses and without prior Wyndham timeshare agreements) in Tennessee within three years prior to the filing of this suit after

attending Wyndham sales presentations who requested cancellation of their contracts, were unsuccessful in obtaining rescission, and complained about sales misrepresentations.

Plaintiffs also move to certify the following Class under Fed. R. Civ. P. 23(b)(2):

All persons who signed Wyndham timeshare agreements (without arbitration clauses and without prior Wyndham timeshare agreements) within three years prior to the filing of this suit after attending Wyndham sales presentations.

Plaintiffs seek injunctive and declaratory relief for the Rule 23(b)(2) Class including full disclosure of the limited availability problem surrounding Wyndham timeshares and the option to be relieved of having to make any further payments to Wyndham.

## III.  SUMMARY OF ARGUMENT

Certification is warranted under *In Re Prudential Insurance Company America Sales Practice Litigation Agent Actions*, 148 F. 3d 283 (3d Cir. 1998).  In *Prudential*, the Third Circuit affirmed certification of a class of policyholders who were the victims of misleading sales practices consisting mainly of omissions. Although it was a settlement class, the requirements of Rule 23 had to be satisfied. *Id.* at 308.  The Third Circuit wrote:

In its predominance determination, the [district] court focused primarily on plaintiffs' allegations that Prudential engaged in a common course of conduct by which it defrauded class members, and concluded that '[w]here many purchasers have been defrauded over time by similar misrepresentations, **or by a common scheme to which alleged non-disclosures related, courts**

3

**have found that the purchasers have a common interest in determining whether the defendant's course of conduct is actionable.'**

*In Re Prudential Insurance*, 148 F. 3d 283, 314 (3d Cir. 1998) quoting *In re: The Prudential Insurance Company of America Sales Practices Litigation*, 962 F. Supp. 450, 511 (D. .J. 1997)(emphasis supplied).

At the class certification stage, the inquiry is <u>not</u> whether Plaintiffs will ultimately prevail on the merits. As stated in *TEVA Pharmaceuticals USA Inc. vs. Abbott Laboratories*, 252 F.R.D. 213, 227 (D. Del. 2008):

> … the inquiry at the class certification stage is not whether direct purchasers plaintiffs' theories are correct or will ultimately prove successful but, rather, whether the theories are common to the class, susceptible to class-wide proof, and predominate over individual issues.

Wyndham's non-disclosures are common, susceptible to class wide proof and predominate over individual issues.

## IV.  <u>STATEMENT OF FACTS</u>

### A.  The Plaintiffs

### Steve Kirchner and Elizabeth Kirchner

Steve Kirchner is 63 years old. He received a B.A. in mathematics and a Masters in  Computer Information Systems. He has a top secret security clearance and works for a defense contractor. His wife Elizabeth Kirchner works at an eye clinic.

The Kirchners were offered a two-day promotional trip by Wyndham to stay in Pigeon Forge, Tennessee.  The offer required that they attend what was billed as

4

one to two-hour sales presentation.   In fact, the presentation took five hours.     The Kirchners signed a contract to purchase 84,000 points for $15,500.   Points are the currency used to book destinations.   In the original timeshare model, people bought the right to stay at a specific resort for a specific time period each year.     Now, Wyndham sells points in the guise of offering more flexibility.[2]

The Kirchners have been unable to book their desired Wyndham destinations. They requested cancellation of their contract, but Wyndham refused.   (Complt. ¶¶ 40, 41.)   In deposition, Mr. Kirchner testified about Wyndham's omissions:

████████████████████████████████████
████████████████████████████████████

A.   No.

Q.   If you had been told that, would you have purchased?

A.   No.

 ████████████████████████████
████████████████████████████████████

---

[2] The Plaintiffs and putative Class Members do not have arbitration clauses.  Plaintiffs' counsel filed *Bedgood v. Wyndham Vacation Resorts, Inc.* (M.D. Fla. No. 21-cv-418) for Owners with arbitration clauses.   In that case, the plaintiffs filed arbitration demands with the American Arbitration Association (AAA).  The AAA declined to hear the arbitrations because Wyndham refused to comply with AAA rules.  The AAA told Plaintiffs they were free to file suit, which they did. In the lawsuit, Wyndham moved to compel arbitration.  The district court denied Wyndham's motion.  Wyndham appealed to the Eleventh Circuit where the case is pending.  In a similar case, Wyndham's strategy of moving for arbitration after refusing to abide by AAA rules was labelled "chutzpah".  *See Heisman v. Wyndham Vacation Resorts, Inc.*, 2021 WL 1138125 at *1 (D.N.J. March 22, 2021).

A.  No.

Q.  If you had known that, would you have purchased?

A.  No.

(Steven Kirchner Transcript, pp. 245-246,  **Exhibit B.**)( Elizabeth Kirchner Transcript attached as **Exhibit C**.)

**Robert Weston**

Plaintiff Robert Weston is a 77 year old retiree.  On October 20, 2017, he attended a  Wyndham sales presentation at the Club Wyndham Desert Blue, 3200 West Twain Avenue, Las Vegas, Nevada 89103.   Mr. Weston was in Las Vegas as part of a road trip to California.   Wyndham personnel offered him a free dinner at a steakhouse and free show tickets if he attended a lengthy sales presentation at the Club Wyndham Desert Blue.

Mr. Weston bought 84,000 points for $14,879 and paid in full.  (Complt. ¶56.)  He unsuccessfully tried to rescind it, but was one day late.  He then tried to use it, but was not successful.   When he sought to book a Wyndham resort in Orlando, he found that his 84,000 points were grossly inadequate.  (Complt. ¶58.)

Mr. Weston testified that he has "been had" by Wyndham "(b)ecause I have been lied to clearly." (**Exhibit  D,**  Weston Dep. at p. 78, lines 22-24). ██████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████ *Id.* at pp. 179, 180,

lines 13-25, 1-25.)

## B. Wyndham's Uniform Non-Disclosures

The ██████████████ establish that:

▪ █████████████████████████████████
█████████████████████████████████
███████████████████████████

█ █████████████████████████████████
████████ ██████ █ █ ██████████████ █ ████████
██████████

█████████████████████████████████
█████████████████████████████████
█████████████████████████████████
████ ████████████████████

█ █████████████████████████████████
████████ ██████ █ █ ██████████████ █ ████████
██████████

█████████████████████████████████
███████ ████████████████ █ ██████████
██████████

█████████████████████████████████
█████████████████████████████████
█████████████████████████████████
████████████████████████

Absolutely none of this is disclosed by Wyndham.    Indeed, its sales presentations are so misleading that T.V. host John Oliver singled out Wyndham for its lies:

> Lying is actually a key strategy for many timeshare salespeople.  They will lie about everything,  from the ease  of making reservations, to the total cost of the timeshare.  According to a lawsuit against Wyndham, salespeople even had an acronym, 'TAFT' which stood for 'tell them any frigging thing'.  (**Exhibit E**  - John Oliver Doct.  Nos. 008-009.)
> John Oliver show broadcast (3/19/2023).[3]



https://www.youtube.com/watch?v=Bd2bbHoVQSM

███████████████████████████████████

███████████████████████████████████

---

[3]  The lawsuit referred to by Oliver is *Williams v. Wyndham Vacation Ownership, Inc.* (San Francisco Superior Ct., Case No. CGC-12-526187).  It was a whistleblower suit.  Plaintiff was awarded a $20 million  jury verdict.  (Complt. ¶ 85 ).



(**Exhibit F -** Maciulewicz Deposition p. 138, lines 1 to 16.) [5]

**C.** ████████████████████████████████████████

████████████████████████████████████████████████████

Wyndham's deceptive tactics start even before sales presentations begin.    Non-owner guests arriving at Wyndham resorts check in at the front desk and are told that they "need" to report to the marketing desk in the lobby.    At the marketing desk, guests are offered gifts to attend a "ninety minute" sales presentation. (Complaint Doct. 83, ¶23.)

---

[4] ████████████████████████████████████████████████████, Wyndham refuses to produce him for deposition and refuses to conduct a search of his emails.

[5] The deposition transcripts of Rachel Summers (**Exhibit H**), Sarah Patti (**Exhibit I**),  and Danielle Henderson (**Exhibits J-1 and J-2.**) are attached hereto.    Summers and Patti work in inventory management. ████████████████████████████████████████████████████
████████████████████████████████ ████████ **Exhibit** H, pp. 50-51, lines 21-25, 1.)  Sarah Patti agreed.  (**Exhibit I**, p. 56, lines 13-17.)  Henderson corroborated Wyndham's omissions.  (**Exhibit J-2**, p. 337, lines 15-25, p. 338, lines 1-2, p. 339, lines 1-15, p. 348, lines 14-23.)

These sales presentations to new Owners have the same structure. A podium presenter gives a warm up speech using a uniform twenty-five page script. ▬

▬

▬

▬

▬

**Exhibit G**, -Wheeler Deposition Transcript, p. 22, lines 21 - 24.

Prospects are then given a tour of luxury resort accommodations. Next, they are seated down at small tables for one-on-one sessions with sales representatives. (Complaint Doct. 83, ¶25 (f)-(g).) A tag team hammers away at them for hours. Steep "discounts" are offered which are "good for today only".



After years of discovery battles,[6] ▬

▬

▬

---

[6]  In discovery, Wyndham spuriously argued that: (i) parties cannot attend depositions; (ii) attorneys cannot ask a deposition witness what documents they looked at to prepare for a deposition without breaching work product privileges; and (iii) attorney Jim Savina who served in a non-legal role ▬ should not be deposed. Plaintiff Steve Kirchner was asked in deposition about personal medical issues (Exhibit B, p. 102, lines 2-6) Whistleblower Danielle Henderson was deposed about her romantic relationships. (Exhibit J-2, p. 282, line 25, p. 283, lines 1-6.)



## V. <u>ARGUMENT</u>

### A.    Plaintiffs Satisfy the Requirements of Rule 23(a)

The threshold requirements of Rule 23(a) are met: numerosity, common questions of law or fact, typicality, and adequacy of representation.  F. R. Civ. Pro. 23(b)(2) and (3) are also satisfied.  "The Third Circuit has indicated that class actions should be looked upon favorably."  *Spark v. MBNA Corp.*, 178 F.R.D. 431, 434 (D. Del. 1998) (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985)).  As the United States Supreme Court has recognized, "[c]lass actions serve an important function in our system of civil justice."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981).  Class actions achieve:

> … the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient and economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims.

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 402-03 (1980). *See also In re Constar International Inc. Securities Litigation,* 585 F. 3d 774, 780 (3d Cir. 2009).

The district court has broad discretion in determining whether a particular case may proceed as a class action. *See Alexander v. Gino's, Inc.*, 621 F.2d 71, 74 (3d Cir. 1980). Recognizing that Rule 23 should be applied flexibly, the Third Circuit has held that the interests of justice require that "in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." Accordingly, "the standard for determining whether the class action prerequisites are met is rather lenient." *Eisenberg*, *supra* at 785. Here, the Court can readily find that the procedural requirements of Rule 23 are satisfied.

### 1. Numerosity

In considering how many class members is enough to satisfy Rule 23(a)(1)'s numerosity requirement, the Third Circuit has avoided "hard and fast number[s]," but indicated that "… numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the requirement." *Weiss v. York Hosp.*, 745 F.2d 786, 808, n. 35 (3d Cir. 1984) (92 member class sufficiently numerous) (citation

and footnotes omitted).  Thus, although "no minimum number of plaintiffs is required," this Court has consistently found classes with only a few dozen class members sufficiently numerous. *Stewart v. Abraham*, 275 F.3d 220, 226- 27 (3d Cir. 2001), ("… generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met").    The Cancellation Class has about 2,000 members; the Tennessee Subclass has more  than 40 members; and the Injunctive Relief Class has at least 120,000 members.[7]

## 2. Commonality

"The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Therefore, the commonality element does not require identical claims or facts among all class members, but rather, that "the named Plaintiff share at least one question of law or fact with the grievances of the prospective class." *Johnston v. HBO Film Mgmt. Inc.*, 265 F.3d 178, 184 (3d Cir. 2001.)  The existence of "factual differences among the claims of the putative class members do[es] not defeat certification." *Id*.  Because a plaintiff's claims need not be identical to all class members and a plaintiff is only

---

[7] Wyndham has never contested numerosity.   The numbers of people in the Cancellation Class and Subclass are derived from WVR-Kirchner Doct. No. 358919. Plaintiffs worked backwards from Wyndham's annual dollar sales of vacation ownership interests to new Owners to estimate the number of Injunctive Relief class members.

required to show that he or she shares one question of fact or law with the prospective class, the commonality requirement is "easily met." *Id. See also In re Chiang*, 385 F.3d 256, 265 (3d Cir. 2004) (commonality requirement "is not a high bar"). Here, Plaintiffs and Class Members share the common question of whether Wyndham's omissions are actionable.

### 3. Typicality

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). " The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins.*, 148 F.3d at 311. Typicality is thus found "'where there is a strong similarity of legal theories . . . or where the claims of the class representatives and the class members arise from the same alleged conduct by the defendant.'" *In re Prudential Ins.*, 962 F. Supp. at 518.

Typicality does not require that "… all putative class members share identical claims." *Baby Neal*, 43 F.3d at 56. Thus, "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Id*. at 58. Accordingly, "… the threshold for satisfying the typicality prong is a low one." *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D. 136, 140 (D.N.J. 2002),

14

*aff'd*, 84 Fed. Appx. 257 (3d Cir. 2004).  Where, as here, "it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a *strong assumption* that the claims of the representative parties will be typical of the absent class members." *Id*. quoting *In re Catfish Antitrust Litigation*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993.)

Wyndham engaged in a common scheme of omissions.  Even without knowing about the ████████ omissions, scores of Owners complained about the Wyndham's failure to disclose the truth in its sales presentations.  The Better Business Bureau complaints about Wyndham's deceptive sales practices consume 984 pages, Yelp - 468 pages, consumeraffairs.com - 335 pages, and "The Dishonest Practices of Club Wyndham" on Trip Advisor - 93 pages.  Owner complaints produced to Wyndham in this case total 1,880 pages leading to a stack of paper seven inches high:



15

Owners continually use the same words: "deceitful", "deceptive", "lies", "fraudulent", "liars", "fraud", "misleading", and "scam" to describe Wyndham's conduct (**Exhibit N**):

> Patty D  9/13/2023 on Better Business Bureau website:
> "They are a scam … THEY ARE A BUNCH OF LIARS…"

> Eric H  9/13/2023 on Better Business Bureau website:
> "Manipulative practices… all the lies….It is sickening how deceitful this company and sales people are."

> Casey R. 8/31/2023 on Better Business Bureau website:
> "They are all liars…DON'T TRUST WYNDHAM AT ALL!!!"

> Alkina E 8/30/2023 on Better Business Bureau website"
> "Beware of Wyndham's deceitful tactics! … Wyndham's lack of transparency, deceptive sales practices, and disregard for honesty left us financially burdened and deeply disillusioned."

> Reginald F 8/30/2023 on Better Business Bureau website:
> "…we have fallen victim to deception, misleading information and relentless tactics."

> Brandon R 8/28/2023 on Better Business Bureau website:
> "MANY FALSE PROMISES … Do not fall for Wyndham's web of lies."

> Darlene S 8/22/2023 on Better Business Bureau website:
> "The presentation at St Thomas 6/23, was … exaggerated, misleading, unethical, and downright fraudulent…."

> Scott L 8/15/2023 on Better Business Bureau website:
> "THEY ARE GUILTY OF CONTRACT FRAUD."

> Jatesh S 8/8/2023  yelp review:
> "I can't believe this company is allowed to be publicly traded.  Lies after lies when they try to sell you something."

> Quicha B. 8/15/2023  yelp review:

16

"They are scammers."

Sarah H.  7/17/2023 yelp review:
"Blatant LIES by the company from the start to the end."

Ny'ker C. 3/19/2023 yelp review:
"Horrible snake oil salesmen…"

Amit B 3/23/2023 yelp review:
"100% SCAM!"

Ben M 6/21/2021 yelp review:
"I am 77 years old and live on fixed income.  They don't care about their own cancellation policy or that they destroy the lives of senior citizens…."

John W 12/8/2022 yelp review:
"This 'company' (let's be real is nothing more than a pyramid/Ponzi scheme) is the absolute worst!!"

Ruth 8/9/2023 on consumeraffairs.com:
"They lied and misrepresented what we was buying and paying for and a whole lot of unnecessary lies about the points…."

Jim 6/132023 on consumeraffairs.com
" Do not attend any of the Wyndham presentations as they are complete lies."

Wyndham Owners have also posted youtube videos about Wyndham's sales practices. Scores of people, including senior citizens, veterans, and medically infirm persons have all been deceived:



17



### Wyndham Timeshare Presentation experience

25K views • 3 years ago

Grotivation

In this video I try to explain my 4+ hour experience and result in about 16 minutes. Alot of info to process and condense.



Intro | Meeting | Price | Fees | Honeymoon                                    5 chapte



### Wyndham Timeshare Nightmare

161K views • 9 years ago

Amber Martinez

Another story to warn others of **Wyndham** Vacation Resorts: Stay AWAY!



### Club Wyndham! Cancel our Timeshare!!! Sales Representatives are DECEIVING! #timeshare

2.5K views • 1 year ago

From the Pacises

UPDATE: We were told to make this acting video so that they would cancel the **timeshare**. We acted well. Mahalo! We already



### Fraud Alert Wyndham timeshare scam warning

71K views • 5 years ago

Timeshare Truth

Beware **Wyndham timeshare** scam. Warning for anyone thinking of buying a timeshare at Wyndham.



### Stay Away From Wyndham Timeshare.3gp

228K views • 11 years ago

Malzavier

I'm telling you what happened to me, so that you can avoid making the same mistake I did. Don't be t

18



How I got caught up in timeshare with Worldmark by Wyndham in Las Vegas

1.5K views · 1 year ago

All things Trea

How I got caught up in timeshare on my vacation and how I got out of it. #timeshare #worldmarkbywyndham #lasve



Club Wyndham is a SCAM

2.5K views · 8 months ago

The Family Work

Plan on doing a Timeshare tour for free stuff? Listen to our story and save yourself tens of thousands of dollars! :



Couple Goes To Wyndham Timeshare Meeting, Unknowingly Gets $15K Line Of Credit

1.5K views · 5 years ago

NewsChannel 5

A couple went to a Wyndham timeshare presentation in Nashville and later discovered they'd unknowingly applied for a $



Another Couple Feeling Trapped by Wyndham Resorts Timeshares

905 views · 4 years ago

Reform Timeshare

Cynthia and Larry tell their story of feeling victimized by Wyndham Resort timeshare scheduling nightmares, resort unav

*See* https://www.youtube.com/results?search_query=wyndham+timeshares.

What happened to Plaintiffs is typical of the experiences of Class Members.

### 4. Adequacy of Representation

The Third Circuit utilizes a two-part test for determining the adequacy of representation by the named plaintiff and his counsel under Rule 23(a)(4): "(a) the

19

plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975).

Plaintiffs have retained counsel highly experienced in this type of litigation and eminently able to protect the interests of the class in conducting this litigation. To demonstrate the qualifications of counsel, "firm resumes [demonstrating that plaintiff's counsel] possess the competence, skill, and experience necessary to the prosecution of the class claims" suffice. *Jerry Enter., Inc. v. Allied Beverage Group, L.L.C.,* 178 F.R.D. 437, 446 (D.N.J. 1998). (See attorney resumes attached as **Exhibit O**.)

The Rigrodsky law firm has extensive experience in class action litigation. It has successfully prosecuted class actions throughout the United States and has the financial resources necessary to pursue this matter to trial. Co-counsel Howard Prossnitz has successfully litigated complex cases, including class actions, for forty-seven years.

Plaintiffs' interests do not conflict with those of the other members of the proposed Class. To be cognizable, a conflict of interest between the proposed class representatives and the absent class members must be real and not hypothetical or speculative. *In re Suboxone Antitrust Litigation*, 967 F. 3d 264, 273 (3d Cir. 2020.) That standard is satisfied.

Wyndham may speciously attack adequacy.  It faults the Kirchners for not recognizing its fraud, for not reading the Owners' Membership Directory, and for not seeing boilerplate disclaimers.   However, boilerplate disclaimers do not cure fraud in the inducement.  *Norton v. Polpos*, 443 A. 2d 1, 6 (Sup. Ct. Del. 1982). Wyndham has wrongly argued that Mr. Kirchner must be able to identify names of class members, even though he testified that he is aware of over 1,000 Better Business Bureau complaints.  (**Exhibit B**, p. 237, lines 14-17.)   It may contend that Weston can only represent people who tried to rescind one day late.

These arguments miss the fundamental point: Plaintiffs would <u>never</u> have purchased their timeshares in the first place but, for Wyndham's omissions.    They have no cognizable conflicts with Class Members.  Thus, Plaintiffs and their counsel are adequate representatives.[8]

## B.  The Requirements of Rule 23 (b)(2) and (3) Are Satisfied

### 1.  The Rule 23(b)(3) Class and Subclass Should Be Certified

Rule 23(b)(3) requires  the Court to find that: "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The

---

[8] If the Kirchners and Mr. Weston were disqualified for any reason,  hundreds of Wyndham Owners are waiting to take their place as Class Representatives.

Supreme Court has observed that "… the dominant purpose behind certifying Rule 23(b)(3) cases is to vindicate the rights of people who individually would be without the strength to bring their opponents into court; it overcomes the problem of small recoveries, which do not provide enough incentive for individual actions to be prosecuted." *In Re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 247 (D. Del. 2002) *citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

With common questions of fact and law established, the Court's inquiry turns to whether any individual issues predominate over these common legal and factual issues.  The predominance requirement of Rule 23(b)(3) "… tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 311 (3d Cir. 2008).  *See also Amchem*, 521 U.S. at 623.

Predominance is readily met in cases, such as this, alleging a common course of conduct involving omissions by a defendant.    As stated in *Amgen Inc. v. Connecticut Retirement Plans*, 568 U.S. 455, 459 (2013):

> Rule 23(b)(3) requires a showing that questions common to the class predominate, not that these questions will be answered, on the merits, in favor of the class.  Because materiality is judged according to an objective standard the materiality of Amgen's alleged misrepresentations and omissions is a question common to all members of the class ….

Further, as explained in *Prudential*, supra, "…because 'plaintiffs' fraud-based claims stem largely from omissions,' reliance can be presumed."  148 F. 3d at 314.

22

Thus, the proposed Classes are cohesive.  Everyone was subject to the same omissions.

The Rule 23(b) Class and Subclass are manageable.  ███████████████

███████████████████████████████████████ (**Exhibit P,** WVR

Kirchner CONFIDENTIAL 358919.) ███████████████, the identity of Class

Members can be easily determined.  A class action is a superior method to resolve

this controversy.  Few lawyers are going to take individual cases involving $21,000

on a contingent fee basis.  The timeshare exit companies are often unscrupulous.  As

a practical matter, this action is the only hope of relief for the vast majority of Class

Members.  Not a week goes by without Wyndham Owners calling Plaintiffs' counsel

and asking to "join" the case.

### 2.  The Rule 23(b)(2) Class Should Be Certified

Class certification is appropriate when:

> the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2).

Wyndham has acted on grounds generally applicable to the Class by not disclosing

material information. The Third Circuit has stated that "this requirement is almost

automatically satisfied in actions primarily seeking injunctive relief." *Baby Neal,* 43

F.3d at 58 (citing *Weiss*, 745 F.2d at 811.)

Plaintiffs seek injunctive and declaratory relief for Rule 23(b)(2) Class Members. Wyndham should be ordered to make full disclosure to these Class Members concerning availability issue and to give Owners the option of not making further payments to Wyndham.

### C.  The Court Should Appoint Plaintiffs as Lead Plaintiffs and Plaintiffs' Attorneys as Class Counsel

Fed. R. Civ. P. 23(g)(1) states that "a court that certifies a class must appoint class counsel." Appointed class counsel must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The court should consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and  claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(iv).   Plaintiffs' lawyers have devoted $1 million of lodestar time to their Wyndham cases over four years including reviewing 500,000 documents,  taking depositions, writing briefs, and interviewing witnesses. They have demonstrated an unparalleled  level of commitment to securing relief for Class Members.

24

# VI.  **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that: (1) this action be certified as a class action on behalf of the Classes described herein; (2) Plaintiffs be certified as Class Representatives; and (3) Plaintiffs' lawyers be appointed Class Counsel.

Dated:  October 19, 2023        Plaintiffs,

            By: *Herbert W. Mondros /s/*

> Seth D. Rigrodsky (#3147)
> Gina M. Serra (#5387)
> Herbert W. Mondros, Esq. (#3308)
> RIGRODSKY LAW, P.A.
> 300 Delaware Avenue, Suite 210
> Wilmington, DE 19801
> Tel.  (302) 295-5310
> Email: sdr@rl-legal.com
> Email: gms@rl-legal.com
> Email:hwm@rl-legal.com
>
> Howard B. Prossnitz, Esq.
> LAW OFFICES OF HOWARD B. PROSSNITZ
> 1014 Ontario Street
> Oak Park, IL 60302
> (708) 203-5747
> prossnitzlaw@gmail.com
> *Pro hac vice*

25

# INDEX TO EXHIBITS

A.  WVR Kirchner CONFIDENTIAL Doct. Nos.  359009-359035, 541805-541831

B.   Plaintiff Steven Kirchner Deposition Transcript

C.  Plaintiff Elizabeth Kirchner Deposition Transcript

D. Plaintiff Robert Weston Deposition Transcript

E.  John Oliver March 19, 2023 Show Transcript

F.  Kevin Maciulewicz, ███████████████████████, Deposition Transcript

G.  John Wheeler, Wyndham Sales Training,  Deposition Transcript

H.  Rachel Summers, Wyndham Inventory Management,   Deposition Transcript

I.  Sarah Patti, Wyndham Inventory Management, Deposition Transcript

J-1 and J-2.  Danielle Henderson, Wyndham Whistleblower, Deposition Transcript, Volumes I and II

K. ██████████████████████, WVR Kirchner CONFIDENTIAL Doct. Nos. 358088-358112.

L. ████████████████████, WVR Kirchner CONFIDENTIAL Doct. Nos 356584-356600.

26

M. ███████████████████, WVR Kirchner CONFIDENTIAL Doct.

Nos. 356720-356740.

N. Samples of Wyndham Owner Complaints from Better Business Bureau, Yelp

and Consumer Affairs Websites

O. Resumes of Plaintiffs' Attorneys

P. ███████████████████████████████████ –

WVR- Kirchner CONFIDENTIAL Doct. No. 358919

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The undersigned counsel certifies that this filing complies with the type, font, and word limitations set forth in the Court's Standing Order of November 6, 2019. According to the word processing system used to prepare it, the foregoing document contains 4,996 words, excluding the case caption, table of contents, table of authorities, index to exhibits and signature block.   The text of this document was prepared in Times New Roman, 14 point, with quotations 13 point, and footnotes 12 point.


*Herbert W. Mondros /s/*

## **Certificate of Service**

The undersigned attorney certified that he served a copy of the foregoing on all counsel of record through the Court's electronic filing system on this 20th day of October, 2023.

*Herbert W. Mondros /s/*