## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

STEVEN ERIC KIRCHNER, ELIZABETH
LEE KIRCHNER, and ROBERT GRANT
WESTON, individually and on behalf of all
other persons similarly situated,

        Plaintiffs,

      v.

WYNDHAM VACATION RESORTS, INC.,

        Defendant.

Civil Action No. 20-436-RGA

### MEMORANDUM ORDER

Before me are Plaintiffs' motion for class certification (D.I. 112) and motion for an

evidentiary hearing and for leave to file a trial plan (D.I. 134). I have considered the parties'

briefing. (D.I. 113, 120, 122, 134–36). I heard oral argument on the motion for class

certification on July 22, 2024.[1] For the reasons set forth below, Plaintiffs' motions are DENIED.

### I. BACKGROUND

This putative class action arises out of alleged omissions and misrepresentations made in

timeshare sales presentations by Defendant Wyndham.[2] On March 27, 2020, Plaintiffs Steven

Eric Kirchner and Elizabeth Lee Kirchner filed their first complaint with co-plaintiff Nazret Z.

Gebremeskel on behalf of themselves and all other similarly situated people. (D.I. 1). The class

allegations were limited to people who signed timeshare agreements in Tennessee and Nevada.

---

[1] Citations to the transcript of the argument, which is not yet docketed, are in the format
"Hearing Tr. at ___."

[2] Plaintiffs seek class certification based on omissions, not misrepresentations. (Hearing Tr. at
9:17–21).

The Kirchners sought to represent the class of people who had signed timeshare agreements in Tennessee, while Gebremeskel sought to represent the class of people who had signed timeshare agreements in Nevada. (*Id.* ¶¶ 60–61).

After a dismissal under Federal Rule of Civil Procedure 9(b), Plaintiffs filed an amended complaint on April 26, 2021, substituting Gebremeskel with a new class representative, Marcia Richards, because Gebremeskel's claims were individually settled. (*See* D.I. 21 ¶ 1; *see also* D.I. 27). In addition to pleading additional facts to cure the Rule 9(b) defect, the Amended Class Action Complaint added a count of "fraudulent inducement by omission" and correspondingly modified the putative class to one without geographical restrictions, with all three named Plaintiffs serving as class representatives. (D.I. 27 ¶¶ 65, 92–98). The Kirchners continued to seek to represent the subclass of people who had signed agreements in Tennessee, while Richards sought to represent the subclass of people who had signed agreements in Nevada. (*Id.* ¶¶ 65–67). I dismissed Plaintiff Richards's claims as untimely. (D.I. 44 at 6–8).

Plaintiffs then filed a Second Amended Class Action Complaint, substituting Plaintiff Robert Grant Weston as an additional class representative for the national class and as the sole representative for the Nevada subclass. (D.I. 52 ¶¶ 65, 67). The current operative complaint is the Corrected Third Amended Class Action Complaint (the "Third Amended Complaint"), which added additional factual pleadings. (D.I. 83). It alleges fraudulent inducement by omission, violation of Nevada's deceptive trade practices act, and violation of Tennessee's timeshare act. (*Id.* ¶¶ 92–108).

On March 27, 2023, I granted Defendant's motion to dismiss Count II of the Third Amended Complaint. I denied Defendant's motion to dismiss Count I. (D.I. 97 at 9–10).

Plaintiffs seek to certify the following class and subclass under Rule 23(b)(3):

a. All persons who signed Wyndham timeshare agreements (without arbitration clauses and without prior Wyndham timeshare agreements) within three years prior to the filing of this suit after attending Wyndham sales presentations who requested cancellation of their contracts, were unsuccessful in obtaining rescission, and complained about sales misrepresentations.[3]

b. All persons who signed Wyndham timeshare agreements (without arbitration clauses and without prior Wyndham timeshare agreements) in Tennessee within three years prior to the filing of this suit after attending Wyndham sales presentations who requested cancellation of their contracts, were unsuccessful in obtaining rescission, and complained about sales misrepresentations.[4]

(D.I. 112 at 1–2).

Plaintiffs seek to certify the following class under Rule 23(b)(2):

All persons who signed Wyndham timeshare agreements (without arbitration clauses and without prior Wyndham timeshare agreements) within three years prior to the filing of this suit after attending Wyndham sales presentations.[5]

(*Id.* at 2).

## II.    LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). To qualify for this exception, a party "must affirmatively demonstrate [its] compliance" with Federal Rule of Civil Procedure 23 by a preponderance of the evidence. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 485 (3d Cir. 2015). Before a proposed class can be certified, plaintiffs must establish that all four prerequisites of Rule 23(a), and at least one part of Rule 23(b), are met. *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001).

---

[3] I refer to this as the "Cancellation Class."

[4] I refer to this as the "Tennessee Subclass."

[5] I refer to this as the "Injunctive Relief Class."

3

Rule 23(a) sets forth four prerequisites that must be met to obtain certification of a class: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).

Rule 23(b)(2) authorizes a class action if the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3d Cir. 2011). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The district court must conduct a "rigorous analysis" when determining whether Rule 23's requirements have been met. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). The Third Circuit has provided detailed guidance for district courts conducting this "rigorous analysis." *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d Cir. 2008). A party's assurances that it plans to meet Rule 23's requirements are insufficient. *Id.* at 318. Rather, the Court is required to make a "definitive determination" that each requirement of Rule 23 has been met. *Id.* at 320. To the extent factual determinations are necessary, they must be made by a preponderance of the evidence. *Id.* Because Rule 23 does not merely establish pleading rules, the Court may make a "preliminary inquiry into the merits," and "may 'consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.'" *Id.* at 316–17 (citation omitted); *see also Newton v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001) ("A class certification decision requires a thorough examination of the factual and legal allegations."). If the Court grants class certification, the order must include "a clear and complete summary of those claims, issues, or defenses subject to class treatment." *Wachtel ex rel. Jesse v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 184 (3d Cir. 2006).

Courts have recognized "that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013). To satisfy this implicit "ascertainability" requirement, a plaintiff must show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017) (cleaned up).

## III.   DISCUSSION

### A.  Rule 23(a)

#### 1.  Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This means that the "claims must depend upon a common contention" and that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Count I of the Third Amended Complaint pleads a fraudulent inducement by omission claim. (D.I. 83 ¶¶ 92–98). The Third Amended Complaint alleges that Defendant omitted a variety of material facts in conversations with prospective timeshare owners. The Third

5

Amended Complaint alleges owners "are not told that they will rarely be able to use their timeshares to stay at their desired locations," that owners "are not told that they will need to book up to thirteen months in advance," and more.  (*Id.* ¶ 7).

Plaintiffs argue that the class members "share the common question of whether Wyndham's omissions are actionable."  (D.I. 113 at 14).  Defendant contends that Plaintiffs have failed to establish commonality.  (D.I. 120 at 19).

Although the Third Amended Complaint lists various purported omissions, Plaintiffs' briefing focuses on availability.  Plaintiffs argue that Defendant's sales scripts uniformly state, "You can go anywhere / anytime / and stay in any size accommodation for any number of nights."  (D.I. 113 at 2 (quoting D.I. 113-14)).  Plaintiffs contend that this statement omits that there is an availability problem.  They argue that Defendant "deliberately and intentionally fails to reveal that less than half of Wyndham [o]wners, a mere 38%, are able to use their timeshares within their first year of ownership.  Lack of availability of destinations is the number one reason that [o]wners are unable to use their timeshares."  (*Id.* at 1 (citing D.I. 113-1 at 24–25 of 49)).

The record does not support Plaintiffs' assertion that an availability problem exists.  The evidence on which Plaintiffs rely is a 2019 survey of "new owner barriers to book."  (D.I. 113-1 at 23 of 49).  The survey, which features a 12% response rate—1,023 out of 8,489 individuals— includes the following statement: "Reservation data shows that only 54% of new CLUB WYNDHAM owners are booking within their first year of ownership and only 38% are going on vacation using their points during this first year."  (*Id.* at 24 of 49).  On its own, this statement does not show that owners were unable to book within their first year, nor does it show that an availability problem exists.  The survey also states that 35% of survey responders listed "availability" as the reason they had not made a resort reservation.  (*Id.* at 27 of 49).  These

survey responses, which reveal the perspectives of a small sample of owners, are insufficient to establish that Defendant has an availability problem.

I am dubious about whether Plaintiffs' proffered common question of an actionable omission is specific enough to establish commonality, at least as far as the common question relates to availability. As I explain below, Plaintiffs have not established the requirements of Rule 23 regardless of commonality.

## 2. Typicality

Under Rule 23(a)(3), class certification is appropriate only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality "does not require that all class members share identical claims," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004), but the proposed representative must be "sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class," *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009).

Plaintiffs argue that their experiences are typical of the class members' experiences. (D.I. 113 at 19). Plaintiffs contend that Defendant "engaged in a common scheme of omissions" in its sales presentations. (*Id.* at 15). Defendant argues there is no evidence of typicality, as Plaintiffs' spreadsheet shows that owners requested cancellation for different reasons. (D.I. 120 at 19–20). Defendant contends that Plaintiffs' claims even vary between the Kirchners and Mr. Weston. (*Id.* at 20). Plaintiffs reply, "It is irrelevant that owners cancel for different expressed reasons because every single one of them was subject to the same omissions." (D.I. 122 at 11).

I do not think that Plaintiffs have established typicality. Contrary to Plaintiffs' assertions, I think the class members' reasons for cancellation are relevant, at least for the Cancellation

Class and the Tennessee Subclass.  The definitions of the Cancellation Class and Tennessee

Subclass describe individuals who, after attending Defendant's sales presentations, "requested

cancellation of their contracts, were unsuccessful in obtaining rescission, and complained about

sales misrepresentations." (D.I. 112 at 1–2).  An individual's experience is more likely to be

typical of others' experiences when the purported sales misrepresentations are related to the

cancellation request.  Plaintiffs' main theory about the purported omissions is, "If these facts

were disclosed, Plaintiffs and Class [m]embers would not have purchased Wyndham

timeshares." (D.I. 122 at 1).  Yet in the case of Mr. Weston, the record shows that he attempted

to cancel his contract before attempting to book.  At his deposition, Mr. Weston testified,

> Q. Well, the next day you were concerned enough –
>
> A. Well, I was concerned enough.  It's like, wait a minute, this smells like a rat in a barrel because they're not returning our calls, and we're thinking we made a mistake and we have got some serious questions.
>
> Q. So you did think in those terms the next day?
>
> A. Well, yeah.  But, again, that's not how my mind works, other than when you call somebody and you have got some questions and you're thinking you made a mistake and they do not respond.  Even though I don't think in those terms, you've got to start thinking, wait a minute, the red flag's going up here.
>
> Q. Why did you call these Wyndham folks? What did you want to ask them?
>
> A. Basically, I think at that point, we were thinking we shouldn't do this.  We're giving them money we don't have, it's a travel situation we really don't do, may never do.  Yeah, so, it was – it was like, we have made a mistake.
>
> . . .
>
> Q. Now, after you went back and tried to terminate or rescind unsuccessfully, did you ever try to use your Wyndham points?
>
> A. Well, when I – when we couldn't do it, it's like, okay, we have got it, so I will try this, because we were going to go see my mother.  So . . . as long as we're going to Orlando, let's stay at a nice place . . . .  We couldn't even get a place, let alone with the points we had, that was a joke.

8

(D.I. 113-4 at 17–18 of 82 (deposition transcript at 64:9–67:19)).  Thus, the record does not show that Mr. Weston's decision to cancel relates to omissions about availability.

Plaintiffs have also not shown that the Kirchners' allegations are typical of other class members' experiences.  The Kirchners say they were unable to book vacations at their desired locations.  (*See, e.g.*, D.I. 113-2 at 31–32 of 116).  Plaintiffs cite to various Better Business Bureau complaints, Yelp reviews, consumeraffairs.com posts, and Trip Advisor reviews to argue that many owners complained about Defendant's "failure to disclose the truth in its sales presentations." (D.I. 113 at 15).  These reviews, however, reveal a variety of reasons for owners' complaints.  (*See, e.g.*, D.I. 113-15 at 3 of 15 ("I am demanding that our contract be cancelled, the unauthorized credit line be voided, my credit be restored, and all monies paid to them be immediately refunded."); *id.* at 4 of 15 ("They exploited our family's aspirations, concealed fees and obligations, and ignored our financial constraints."); *id.* at 12 of 15 ("I tried cancelling my contract the same day I signed.  They deny I ever tried and now are systematically ruining my credit.")).  Plaintiffs' other evidence, a spreadsheet of more than 2,000 cancellation requests, does not provide enough details about individuals' reasons for cancellation.  (*See generally* D.I. 113-17).  Plaintiffs' reply brief cites to "specific information" in the spreadsheet about availability.  (D.I. 122 at 10–11).  These assertions are not supported by the excerpted records. (*See* D.I. 113-17).[6]

Based on the record before me, I conclude that the proposed class members' claims require independent consideration of each plaintiff's experience to determine what kinds of

---

[6] I note that of the three quoted pieces of "specific information" (D.I. 122 at 10), only the third is aligned with Plaintiffs' fraud theory.

purported misrepresentations were made. Plaintiffs have not established typicality by a preponderance of the evidence.

### 3. Numerosity, Adequacy of Representation, and Ascertainability

Because I conclude that Plaintiffs have failed to show typicality, I do not need to address the parties' arguments about numerosity, adequacy of representation, or ascertainability. Plaintiffs have failed to satisfy the requirements of Rule 23(a).

### B. Rule 23(b)(2)

Plaintiffs argue that the Injunctive Relief Class should be certified because Defendant "acted on grounds generally applicable to the Class by not disclosing material information." (D.I. 113 at 23). Plaintiffs argue that Defendant "should be ordered to make full disclosure to these Class [m]embers concerning [the] availability issue and to give [o]wners the option of not making further payments." (*Id.* at 24).

Defendant argues that Plaintiffs improperly seek to add a new class of all timeshare purchasers since 2017. (D.I. 120 at 9). Defendant argues that Plaintiffs may refine or narrow an existing class but cannot amend the Third Amended Complaint "to assert an entirely new class." (*Id.* at 10). Defendant further contends that Plaintiffs lack standing. (*Id.* at 10–11).

Even if Plaintiffs had properly raised this class, Defendant argues that they cannot establish wrongful conduct common to the class. (*Id.* at 16). Defendant contends that timeshare owners "participated in individualized sales discussions at different times, with different sales agents, and at different locations, and these discussions necessarily varied based on owners' unique interests." (*Id.*). Defendant further argues that the requested relief would not benefit the entire class because some owners were satisfied or already paid off their timeshares. (*Id.* at 17). To argue that cohesion is not present, Defendant cites to Plaintiffs' request that timeshare owners

be allowed to stop paying, as "cohesion is less apparent" when "monetary relief is requested."

(*Id.* (quoting *Barabin v. Aramark Corp.*, 2003 WL 355417, at \*1 (3d Cir. Jan. 24, 2003))).

Plaintiffs contend that "massively increasing class size [is] not a valid objection." (D.I.

122 at 8). Plaintiffs argue that similar objections were rejected in *Lord Abbett Affiliated Fund,*

*Inc. v. Navient Corp.*, 2020 WL 5026553, at \*2 (D. Del. Aug. 25, 2020). (*Id.* at 7–8). Plaintiffs

further argue that they have standing. Plaintiffs contend there is a likelihood of future injury

because Defendant "is still billing the Kirchners for maintenance fees." (*Id.* at 8). Plaintiffs

contend they do not seek damages, but rather proper disclosure and relief from further payment

obligations. (*Id.*).

"Although Rule 23(b)(2) classes need not meet the additional predominance and

superiority requirements of Rule 23(b)(3), 'it is well established that the class claims must be

cohesive.'" *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 263–64 (3d Cir. 2011) (citation omitted).

"Rule 23(b)(2) requires that 'the party opposing the class has acted or refused to act on grounds

that apply generally to the class.'" *Id.* at 264 (quoting Fed. R. Civ. P. 23(b)(2)). "The key to the

(b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the

notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the

class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (citation omitted). "In other

words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would

provide relief to each member of the class. It does not authorize class certification when each

individual class member would be entitled to a different injunction or declaratory judgment

against the defendant." *Id.*

I agree with Defendant that Plaintiffs have not satisfied the requirements of Rule 23(b)(2)

for the Injunctive Relief Class. The record before me does not show that all members of the

11

Injunctive Relief Class would be entitled to the same injunction or declaratory judgment. For the

Kirchners, relief from further payment obligations would allow them to stop paying maintenance

fees. Plaintiffs have not shown, however, that other members of the class would benefit from the

same relief. In other words, Plaintiffs have not shown that all members of the proposed class

have paid off their timeshares and are only making maintenance fee payments at this time.

Plaintiffs' reply brief merely states that the Kirchners are being billed for maintenance fees.

(D.I. 122 at 8). At oral argument, Plaintiffs' attorney explained that owners "usually put a down

payment on a credit card that Wyndham gets for them for two or three, $4,000, and then

Wyndham finances the balance at like 15.99 percent." (Hearing Tr. at 17:13–16). It is unclear

whether the members of the proposed class are all in the Kirchners' position, or whether they

seek cancellation of additional types of payments. Based on the record before me, it appears that

the Kirchners desire the option of not making additional maintenance fees, whereas other class

members could request broader relief to cover other types of payment as well.

The proposed class also lacks cohesion because many of the members have not voiced

any complaints about their timeshares. Plaintiffs assert the Injunctive Relief Class has at least

120,000 members (D.I. 113 at 13), but the spreadsheet Plaintiffs submitted has fewer than 2,400

entries (*id.* at 23).[7] There is no evidence that the 117,600 or so other members are part of a

cohesive class. The Injunctive Relief Class is broad enough to include individuals who are

satisfied with their timeshares and may not want to stop making payments. Plaintiffs have not

---

[7] Based on what is in the spreadsheet (D.I. 113-17), it is hard to say even the nearly 2400 people
on it look like they have cohesion. I reviewed the first four pages, which have a column
"ReasonForContactOrig." About half of the entries in that column on those four pages have as a
reason, "Question," or "Transaction," or "Cancel—Financial Hardship."

shown that the requested relief would be equally appropriate for individuals such as the Kirchners and those who are satisfied with their timeshares.

I do not need to reach the parties' dispute about whether adding a new, larger class at this stage is proper. Even if it were proper, Plaintiffs have failed to satisfy the requirements of Rule 23(b)(2) for the Injunctive Relief Class.

### C.  Rule 23(b)(3)

The predominance requirement of Rule 23(b)(3) is "a standard 'far more demanding' than the commonality requirement of Rule 23(a)." *Hydrogen Peroxide*, 552 F.3d at 310–11. Under the first criterion of Rule 23(b)(3), I consider whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). To determine whether common issues of fact or law predominate over individual issues, I "examine the elements of plaintiffs' claim." *Hydrogen Peroxide*, 552 F.3d at 311. "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Newton*, 259 F.3d at 172.

I do not think that Plaintiffs have shown predominance. Even if Defendant's sales scripts omitted material information regarding availability, the record does not show that all members of the Cancellation Class and Tennessee Subclass are exposed to the same information. During oral argument, Plaintiffs' attorney asserted he is confident that all new owners watch the group presentations. (Hearing Tr. at 30:4–13). Plaintiffs' briefing, however, does not cite to evidence showing that all new owners in fact viewed group presentations that featured the sales scripts.

13

Plaintiffs' opening brief merely states, "All Class [m]embers were subject to the same omissions," without pointing to evidence.  (*See* D.I. 113 at 2).

To the extent that Plaintiffs argue owners cannot go "anywhere / anytime / and stay in any size accommodation for any number of nights," Defendant's sales script includes this language under the "Renting Vacations" section.  The "Renting Vacations" and "Owning Vacations" sections discuss the positives and negatives of owning and renting in general, not with respect to Defendant specifically.  (*See* D.I. 113-12 at 11 of 26; *see also* D.I. 113-14 at 9 of 22).  Because the script does not expressly state that timeshare owners can book any of Defendant's locations at any time, and because the context indicates the discussion is about a different topic, Plaintiffs' reading of the script is not a reasonable interpretation of what the script says.

Additionally, as explained above, the record shows that proposed class members attempted to cancel their contracts for a variety of reasons, including lack of availability, "unauthorized" credit lines, and "concealed fees."  Resolution of these concerns requires individual treatment, particularly because Plaintiffs must establish reliance as an element of their fraudulent inducement claim.  (*See* D.I. 83 ¶ 96).  Plaintiffs' references to *In re Prudential Insurance Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998), for the proposition that reliance can be presumed are unpersuasive.  A presumption of reliance would be in conflict with recent Third Circuit cases directing district courts to conduct a "rigorous analysis" of the evidence and arguments to determine whether the putative class has satisfied the predominance requirement. *See In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 190–91 (3d Cir. 2020).  I think Plaintiffs have failed to show that the proposed Rule 23(b)(3) classes are sufficiently cohesive to warrant adjudication by representation.

14

Because the record does not support Plaintiffs' assertions, I conclude that Plaintiffs have failed to establish predominance for the Cancellation Class and Tennessee Subclass. I do not need to reach the parties' arguments about superiority, as Plaintiffs cannot satisfy the requirements of Rule 23(b)(3) without showing predominance.

### D. Motion for an Evidentiary Hearing

I will also deny Plaintiffs' motion for an evidentiary hearing and for leave to file a trial plan. First, Plaintiffs had the opportunity to submit a trial plan for about nine months between the filing of the class certification motion and oral argument. Regardless, even if a trial plan had been filed and supported a finding of superiority, Plaintiffs would nevertheless fail to satisfy Rule 23(b)(3) due to the predominance requirement. Second, fact and expert discovery have already been completed. Both sides allowed the expert deadline to expire while the class certification motion was pending. Neither side sought to extend the deadline. (Hearing Tr. at 36:12–18, 37:4–9, 74:7–16). Lastly, I do not think that Plaintiffs' briefing sufficiently addresses what kind of information an evidentiary hearing could reveal in support of the class certification motion.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification (D.I. 112) and motion for an evidentiary hearing and for leave to file a trial plan (D.I. 134) are DENIED.

IT IS SO ORDERED.

Entered this 13th day of September, 2024

United States District Judge

15